UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Alan Morrison, | Civ. No. 16-2242 (PAM/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| City of Minneapolis, and Christopher Steward, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion for Summary Judgment. For the following reasons, the Motion is granted.

**BACKGROUND**

In June 2014, an unidentified person reported to Hennepin County Child Protection that a 14-year-old girl, identified in the briefing as "Jane Doe," was being sexually abused by her father, Plaintiff Alan Morrison. (Henry Decl. (Docket No. 28) Ex. 1 (Storm Dep.) at 26-27.) It turned out that the report was false, but at the time neither Child Protection nor the police knew that it was false. As such, Sarah Storm, a child protection worker, forwarded the report to the Minneapolis Police Department ("MPD"), which recommended that she interview the alleged victim. (Id. at 27.)

Storm called Jane Doe's mother, Katina Flaherty, who shares custody with Morrison. (Id. at 29.) Storm also called Morrison to tell him of the allegations and to request time to interview Jane Doe. (Id. at 31-34; Henry Decl. Ex. 5 (Morrison Dep.) at 19.) Morrison was understandably upset by the phone call; he told Storm that she would

remove Doe from his home "over my dead body." (Morrison Dep. at 28; see also Storm Dep. at 30.) Morrison ultimately hung up on Storm. (Storm Dep. at 30.)

Storm contacted the MPD again, and they recommended that she go to Morrison's house and ask for a squad car to meet her there. (Id. at 34-35.) Meanwhile, Ms. Flaherty also drove to Morrison's house, but Morrison would not allow her to take Doe out of the house. (Morrison Dep. at 34.) Storm and two MPD officers arrived at the house approximately ten minutes later. (Id. at 35-36.) Morrison was extremely upset, and repeatedly stated that the officers would have to shoot him before he would allow them to take Doe out of the house. (Storm Dep. at 38.) He did, however, allow Storm to enter the home to talk to Doe. (Storm Dep. at 40.) Morrison remained outside in his front yard. (Morrison Dep. at 47.)

Morrison continued to speak to the officers in an "elevated" voice (Morrison Dep. at 53), telling them that they could not take his daughter, and accusing the officers of violating his and his daughter's civil rights. (Id. at 57.) When Morrison did not calm down, the two responding officers requested additional assistance, and two additional squad cars responded. Defendant Officer Christopher Steward was in one of these squad cars. (Henry Decl. Ex. 4 (Steward Dep.) at 3.) The officers made a loose circle around Morrison. (Id. at 13.) By this time, a crowd had gathered and was observing the events.

Morrison was pacing in his front yard, clearly agitated, and repeatedly flexing his hands into fists. (Morrison Dep. at 49-50, 57.) Morrison suffers from degenerative joint disease and must flex his hands to alleviate the symptoms of that disease. (Id. at 50.) Finally, one of the first officers on the scene, Officer McCarthy, drew his taser and told

Morrison that he was under arrest. (Henry Decl. Ex. 6 (Police Report) at 5; see also Steward Dep. at 16, 18.) Steward, who had been standing behind Morrison, came up behind Morrison and put his arm around Morrison's neck, using a hold called a neck restraint. (Steward Dep. at 17.) Steward took Morrison to the ground, and Morrison lost consciousness for a few moments. (Morrison Dep. at 73.) When he came to, his hands had been handcuffed behind his back, and Officer McCarthy then took Morrison to the squad car. (Id. at 84, 88.) Morrison was charged with obstructing legal process, but those charges were ultimately dismissed. (Henry Aff. Ex. 11.)

The Complaint (Docket No. 1-2) raises six counts against Steward and two counts against the City of Minneapolis. Counts I, II, III, and VI are § 1983 claims against Steward for, respectively, false arrest, excessive force, First Amendment retaliation, and unreasonable seizure. Counts IV and V are state-law claims for false imprisonment and battery against Steward. Finally, Counts VIII and IX raise claims under the Minnesota Government Data Practices Act against the City for its alleged failure to provide him with a complete copy of the dash cam video and Steward's use of force report. Morrison also brought a Monell claim against the City in Count VII, but has stipulated to the dismissal of that claim. (Docket No. 48.) Morrison contends that Steward's actions caused him to dislocate a finger, exacerbated a hernia and Morrison's degenerative joint disease, and bruised his face. He claims damages in excess of $50,000, and also seeks punitive damages.

3

## DISCUSSION

**A.    Summary Judgment**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.    Qualified Immunity**

Qualified immunity protects police officers from suit unless "their conduct . . . violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To evaluate whether an officer is entitled to qualified immunity, the Court must determine whether the facts alleged "make out a violation of a constitutional right." Pearson v. Callahan, 555 U.S. 223, 232 (2009). The Court must also determine whether the right at issue was "clearly established" at the time of the alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Thus, a police officer "is entitled to summary judgment based on qualified immunity unless (1) the evidence, viewed in the light most favorable to the

nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation." Capps v. Olson, 780 F.3d 879, 884 (8th Cir. 2015).

The Supreme Court has recently emphasized that the qualified-immunity inquiry should focus on whether there are any cases "where an officer acting under similar circumstances as [the defendant officer] was held to have violated the [Constitution.]" White v. Pauly, 137 S. Ct. 548, 552 (2017). In other words, while there does not have to be a case "'directly on point' for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. at 551 (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)).

**1.     Excessive Force**

A police officer's use of force is judged under an objective-reasonableness standard. Graham v. Connor, 490 U.S. 386, 397 (1989). The Court must evaluate the facts from the "perspective of a reasonable officer on the scene." Id. at 396. Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." Id.

Morrison contends that there are disputes of fact as to whether he posed any threat to the officers, pointing to the deposition of his neighbor, Jesus Reyes. (Phillips. Decl. Ex. 2 (Reyes Dep.).)  Mr. Reyes offers a very different account of the events, including testifying that the officers tased Morrison (id. at 10), and that there were 12 or 15 officers present, several of whom jumped on Morrison's back after Steward applied the neck

restraint. (Id. at 7.) Mr. Reyes's account is wildly inconsistent with Morrison's own testimony, but Morrison nonetheless asserts that the Court should adopt Mr. Reyes's version of the facts because those are the facts most favorable to Morrison. The Court is reluctant to characterize Mr. Reyes's testimony as an effort "to manufacture a sham issue of fact." Roberts v. Park Nicollet Health Servs., 528 F.3d 1123, 1126 (8th Cir. 2008). However, the serious inconsistencies between Mr. Reyes's version of the incident and the version offered by every other witness make the wholesale adoption of Mr. Reyes's version of the facts inappropriate. Moreover, even taking Mr. Reyes's version as true for purposes of this Motion would not change the Court's conclusion in this case that Steward is entitled to qualified immunity. (See, e.g., id. at 9 (stating that Morrison said "let's go" to the officers, "as in you're going to have to force me out of the way").)

Morrison describes himself as a "nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety." (Pl.'s Opp'n Mem. (Docket No. 39) at 7 (quoting Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir. 2009)).) But this characterization ignores the realities of the situation, which were that Morrison had been accused of sexually abusing his daughter, he was extremely agitated, flexing his hands and yelling at the officers. Indeed, Steward testified that he applied the neck restraint to avoid an altercation or any use of a taser, which would likely have increased Morrison's alleged injuries. (Steward Dep. at 17-18.)

Taking the evidence in the light most favorable to Morrison, it is clear that a officer in Steward's position could reasonably have believed that Morrison posed a threat to the officers and that he would actively resist Officer McCarthy, who was attempting to

6

arrest Morrison. Steward is entitled to qualified immunity on Morrison's excessive-force claim.

### 2. False Arrest[1] and Unreasonable Seizure

Morrison contends that Steward's conduct amounted to an unreasonable seizure and false arrest in violation of the Fourth Amendment. "[O]fficers are 'entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable'—that is, officers are not liable if they had 'arguable probable cause' to make the arrest." Bernini v. City of St. Paul, 665 F.3d 997, 1003 (8th Cir. 2012) (quoting Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008)). Thus, if the officers had arguable probable cause to arrest Morrison, his Fourth Amendment claims fail.

Morrison contends that his encounter with the police was akin to a Terry stop, in which a police officer may briefly detain an individual when there is a reasonable suspicion, but less than probable cause, to believe the individual may have committed a crime. See Terry v. Ohio, 392 U.S. 1 (1968). This situation bears no resemblance to a Terry stop, and thus that case and its progeny are irrelevant to the issues at hand.

Morrison also contends that, at the time Steward seized him, there was no indication that he had committed a crime. But obstruction of legal process is a broad crime, encompassing many different forms of interference with a police officer performing his official duties. Given Morrison's agitated manner, his flexing hands, and

---

[1] Defendants contend that the false arrest claim fails because Officer McCarthy, not Steward, arrested Morrison. Morrison does not address this argument in his brief, and appears to concede that only the unreasonable seizure claim is viable against Steward.

his repeated comments that they would remove his daughter from his home "over my dead body," Steward had at least arguable probable cause to believe that Morrison was obstructing legal process. He is entitled to qualified immunity on Morrison's Fourth Amendment claims.

### 2. First Amendment Retaliation

To establish a claim for First Amendment retaliatory arrest under § 1983, Morrison "must show [that] the [officers arrested him] because [he] engaged in . . . protected speech." Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004). The presence of arguable probable cause for an arrest is fatal to a claim for retaliatory arrest. Galarnyk v. Fraser, 687 F.3d 1070, 1076 (8th Cir. 2012). Morrison appears to claim that Steward used excessive force on him because of his protected speech, but that claim, too is without merit. The Court has found that Steward did not use excessive force, and there is no evidence that Steward decided to arrest or seize Morrison because he was challenging the police officers' authority. Rather, the evidence reflects that Morrison was agitated to the point that the officers feared for their own safety and the safety of Morrison. Their decision to seize and arrest him was not First Amendment retaliation and this claim fails.

### C. State Tort Claims

Defendants argue that the doctrine of official immunity precludes Morrison's state claims of false imprisonment and battery. Official immunity prevents a police officer performing his discretionary functions "from being held personally liable for damages, unless the [officer] has committed a willful or malicious act." Mumm v. Mornson, 708 N.W.2d 475, 490 (Minn. 2006). There is no dispute that Steward's actions in this case

8

were part of his discretionary functions as a police officer, and thus official immunity applies unless he acted willfully or maliciously. "Malice in the context of official immunity means intentionally committing an act that the official has reason to believe is legally prohibited." Kelly v. City of Minneapolis, 598 N.W.2d 657, 663 (Minn. 1999).

Morrison contends that there are fact questions as to whether Steward acted willfully or maliciously, arguing that Steward's intent is a question of fact for the jury to resolve. See Johnson v. Morris, 453 N.W.2d 31, 42 (Minn. 1990) ("Whether or not an officer acted maliciously or willfully is usually a question of fact to be resolved by a jury."). But whether official immunity applies in the first instance is a question of law for the Court to determine. Elwood v. Rice Cty., 423 N.W.2d 671, 679 (Minn. 1988). Thus, only if Morrison has proffered sufficient facts to raise a jury question on the issue is denial of summary judgment on official immunity appropriate.

As noted, there are few factual disputes as to what occurred in Morrison's front yard. The only dispute is whether Morrison posed a threat to the police officers. And as previously determined, a reasonable officer could have believed that he did pose a threat. Thus, there is no genuine issue of fact as to whether Steward acted willfully or maliciously, because even in the light most favorable to Morrison, the evidence establishes that Steward did not so act. See Gilmore v. City of Minneapolis, No. 13cv1019, 2015 WL 1189832, at *19 (D. Minn. Mar. 16, 2015) (Tunheim, J.) (granting summary judgment on official immunity because the facts "do not offer any support for a claim that [the officers] acted willfully and maliciously"). Official immunity applies and

9

Morrison's state-law claims must therefore be dismissed.  See Pletan v. Gaines, 494 N.W.2d 38, 41 (Minn. 1992).

**D.   Data Practices Act Claims**

Finally, Morrison claims that the City violated the Government Data Practices Act, Minn. Stat. § 13.03, by not providing him the entire copy of the dash cam video and by failing to provide him with the use-of-force report.  The City contends that it has supplied him with numerous copies of the complete video at issue and Morrison has not continued to press that part of his claim here.  He argues only that the use-of-force report is a government record that must be provided under the GDPA.

The GDPA creates a presumption that government data should be public.  Minn. Stat. § 13.03, subd. 1.  But certain categories of "personnel data," which is "government data on individuals maintained because the individual is or was an employee of . . . a government entity," id. § 13.43, subd. 1, is exempt from disclosure. Id. subd. 4.  As relevant here, when a police officer is the "subject of the data" and the data was "collected because the individual is or was an employee," that data is private data not subject to disclosure under the GDPA.  Star Tribune v. City of St. Paul, 660 N.W.2d 821, 826 (Minn. Ct. App. 2003) (quoting Minn. Stat. § 13.42, subd. 4).

In support of his argument, Morrison relies heavily on a Hennepin County District Court case determining that the use-of-force reports of a Brooklyn Park police officer was a government record not protected from disclosure.  Cmtys. United Against Police Brutality v. City of Brooklyn Park, Civ. No. 27-14-6084 (Minn. Dist. Ct. Sept. 17, 2014).  Brooklyn Park argued in that case, as the City does here, that these reports were

"collected to evaluate the performance of individual officers" and were therefore personnel data that is not subject to disclosure under the GDPA. Id. at 4. The court nevertheless ordered the city to disclose portions of the use-of-force reports pursuant to the GDPA.

But the court also determined that portions of the reports were not subject to disclosure. While the "factual information describing the use of force encounter" was public data, the portion of the reports containing analysis of the incident and review of the officer's performance was not subject to disclosure. Id. at 7-8. The City asserts that the MPD's use-of-force reports are not the same as those Brooklyn Park uses. According to the City, the MPD's reports, called "Supervisor Force Reviews," consist entirely of analysis and a supervisor's review of the incident. Factual information regarding the use of force is contained in the either the supervisor's supplement or the officer's own police report, both of which the City has already disclosed to Morrison.

The City has established that the report Morrison seeks is not public data as the GDPA defines that term. Summary judgment on Morrison's claims under the GDPA is therefore appropriate.

**CONCLUSION**

The Court is sympathetic to Morrison, who was accused of a terrible crime and was quite naturally upset about that accusation. The officers, however, were performing their duties in a lawful manner. Therefore, Morrison's substantive claims are barred by qualified and official immunity, and his GDPA claim is without merit.

Accordingly, **IT IS HEREBY ORDERED that** Defendants' Motion for Summary Judgment (Docket No. 22) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: <u>January 26, 2018</u>

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge
